2025 IL App (2d) 240630-U
No. 2-24-0630
Order filed January 22, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 05-CF-3046, 05-CF-3629 |
| PAUL OLSSON, | ) ) ) | Honorable David C. Lombardo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The State's verified petition to detain defendant was not untimely as it was filed as a responsive pleading to defendant's motion for release and, therefore, not subject to time constraints articulated in section 110-6.1(c)(1) of the Pretrial Fairness Act (Act). The evidence supported the trial court's findings that no set of conditions would mitigate the danger defendant posed. The trial court did not abuse its discretion in granting the State's petition for pretrial detention.

¶ 2                                I. BACKGROUND

¶ 3   On August 14, 2005, defendant was arrested and charged with two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) and two counts of aggravated sexual abuse (720 ILCS 5/12-16 (West 2008)). The trial court set defendant's bond at

$2,000,000.00. Defendant's father posted $200,000.00 and defendant was released on August 16, 2005.

¶ 4     On September 22, 2005, defendant was charged with additional felony sex offenses and the trial court increased his bond to $2,225,000.00. Defendant's uncle posted the additional $25,000.00 on September 22, 2005, and he was released.

¶ 5     On October 12, 2007, the trial court found defendant unfit to stand trial, revoked his bond, and remanded him to the custody of the Department of Human Services (DHS). Defendant remained in DHS custody for the better part of the next 17 years. During that time, the trial court held discharge hearings pursuant to 725 ILCS 5/104-25 in defendant's pending cases. On December 12, 2009, defendant was found not-not-guilty of predatory criminal sexual assault and two counts of aggravated criminal sexual abuse. On December 17, 2009, the trial court certified defendant as a sex offender and remanded him for two years of additional treatment pursuant to 725 ILCS 5/104-25(d)(1).  On February 10, 2011, the trial court found that defendant continued to be unfit and remanded him and ordered him involuntarily committed to DHS "in a secure setting for a period not to exceed the date of 10/12/2037." The trial court further found that defendant c presented "a serious threat to the public safety." Throughout the pendency of defendant's commitment to DHS, multiple no-bond orders were entered.

¶ 6     On September 26, 2023, defendant filed a petition for conditional release from commitment pursuant to 725 ILCS 5/105-25(g)(2). Following a hearing on July 1, 2024, the trial court found defendant fit to stand trial. Defendant's counsel then requested his immediate release under the conditions of bond imposed in 2005. The trial court responded that defendant's "bond was revoked." Defendant was remanded to the custody of the sheriff of Lake County and taken to the Lake County jail.

¶ 7      On July 8, 2024, defendant filed a motion for release that argued for his "immediate release pursuant to the terms of his original bail bond[.]" He further argued that the trial court did not revoke his bond in 2007, but "was merely implementing the statutory directive under [725 ILCS 5/104-17(b) (West 2007)] to confine an unfit defendant so that he could be treated in an inpatient setting." Defendant asserted that his continued detention was not authorized by the Act because his first appearance occurred in 2005. As such, he argued that the State's petition to deny pretrial release would be untimely.

¶ 8      On July 9, 2024, the State responded to defendant's motion and filed a verified petition to detain pursuant to section 110-6.1 of the Act.

¶ 9      On September 4, 2024, the trial court held a hearing on defendant's motion for release and the State's verified petition to detain. The trial court denied defendant's motion for release, rejecting defendant's argument that the State's petition to detain was untimely because the Act did not exist until 2023. The trial court then heard the State's proffer regarding its petition to detain.

¶ 10      The State proffered that defendant was hired by the Lincolnshire Club in 2005 as a part-time tennis instructor for children. During his employment, defendant placed his mouth on the penis of six-year-old M.H. on one occasion and digitally penetrated his anus on another. After an investigation, police interviewed defendant. Defendant confessed to the conduct with M.H. and proceeded to implicate himself in criminal sexual conduct with at least three other minor victims.

¶ 11      The State further proffered that during his 17 years at Elgin Mental Health Center, defendant repeatedly failed to follow the rules, would not engage in services, and would not engage in therapy. He did engage in sexual behavior at the facility, including fathering a child with another person housed there.

¶ 12    Defendant argued that his sex offender risk assessment showed that he was not dangerous. Further, he suggested that the State had only shown that "basically [defendant] was a jerk in Elgin for 17 years" and "some behavioral concerns and some cognitive distortions that occur [are] to be expected."

¶ 13    In granting the State's petition to detain defendant, the trial court found, in relevant part, as follows:

> "With regard to the nature and the seriousness of the offense and considering whether the defendant is a real and present threat to either these individuals or other individuals out there, I would note [defense counsel] went through this report, and with some of the, I guess, findings with regards to low risk for that, low risk for that, this, low risk for that, but they're all qualified. Moderate low risk. They're all qualified when you read this. And, again, this will be part of the record, obviously.
>
> But one of the things it also shows, again, as [the State] just pointed out, you know, there seemed to be an epiphany when the child was born. Of course, again, the child was born through a relationship with another person that was in the facility which, again, is against all the rules, and there was an indication that there may have been other female conduct in there with other women. He denied all of them until one came up pregnant for all intents and purposes, but not, and again, there's an attempt to show that all the bad stuff was in the past, there's nothing to worry about, nothing to worry about.
>
> Well, one of the things that's set forth on page four of the report, more recently on 9-14-23, [Elgin Mental Health Center] security detected a mobile device in the possession of [defendant] which contained a history – a history log of video and audio calls, text messages and images dating back to January 2022.

As detailed in the incident report, communications on the device appeared to involve individuals including his mother, attorney and other identified parties. Earlier inspection of the device unveiled activities such as streaming content on Netflix and accessing social media platforms including Messenger and Instagram. Notably, a portion of the images depicted [defendant's] penis which was transmitted via text messages to a recipient identified as Nancy Li.

These messages contained explicit content including propositions made by [defendant] to engage in sex with the recipient and the recipients quote unquote "younger brother." A remote reset of the device was noted by an unidentified entity within an hour of the investigation resulting in the loss of data before any further information could be obtained. That was *** just under a year ago.

And the Court is in a position to consider all the cases that the defendant has in front of it *** in determining whether or not he is in fact a real and present threat and inherently dangerous notwithstanding these may have been dismissed for whatever reason. Given the fact that he admitted to the actions in those matters, the Court does find by clear and convincing evidence that he did commit the offenses, and, frankly, just based on everything the Court has in front of it, the charges, what the Court has read in the assessment and everything else that it has in front of it, the Court finds that there are no conditions or combination of conditions that could ensure the safety of any individuals out there, especially minors, and/or that the defendant would in fact adhere to any conditions that the Court may place on him given his performance there in the facility up until the time, as [the State] pointed out, that then all of the sudden there was a daughter which if he

followed the rules, there wouldn't be a daughter. And therefore, the petition to detain is granted."

¶ 14    On September 30, 2024, defendant filed a motion for relief pursuant to Rule 604(h)(2) arguing that the State's petition to detain was untimely, and that the trial court should have given more weight to the sex offender risk assessment to find suitable conditions of his release. Following hearing on October 9, 2024, the trial court denied defendant's motion.

¶ 15    This appeal followed.

¶ 16                                  II. ANALYSIS

¶ 17    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (the Code) as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 18    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 19    We review the trial court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the trial court's factual findings as to dangerousness, flight risk,

and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 20    In this appeal, defendant contends that the trial court erred in finding that the State's petition to detain was timely filed because he had previously been ordered released on conditions including money bond and did not seek reconsideration of those conditions. He further contends that the trial court erred in granting the petition to detain by finding that he poses an unmitigable threat to public safety.

¶ 21    We begin with defendant's first contention. Based on the record before this court, defendant's bond was revoked on October 12, 2007. Following his restoration to fitness on July 1, 2024, he was remanded to the Lake County jail. Section 110-7.5(b) of the Act states that "any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." 725 ILCS 5/110-7.5(b) (West 2022).

¶ 22    When defendant elected to file a motion for pretrial release on July 8, 2024, he placed the matter under the strictures of the Act. Defendant's motion triggered consideration of his pretrial release conditions pursuant the Act, under which, on the State's petition, the trial court could deny defendant's release altogether. *People v. Davidson*, 2023 IL App (2d) 230344, ¶ 18. When the State filed its verified petition to detain on July 9, 2024, it was a responsive pleading to defendant's motion for release. *Id.*; See 725 ILCS 5/110-6, 110-6.1 (West 2022). Therefore, as it was defendant

who initiated the proceedings under the Act pursuant to sections 110-7.5(b) and 110-5(e), the time constraints articulated in section 110-6.1(c)(1) are inapplicable to the State's responsive petition to detain defendant.

¶ 23    We now turn to defendant's contention that the trial court's finding that he poses an unmitigable threat to the safety of persons or the community was against the manifest weight of the evidence. Defendant argues that his sex offender risk assessment, rating him as a low risk of near-term recidivism, and the implementation of a combination of home detention solutions would mitigate any threat he poses.

¶ 24    Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g). If the trial court finds that the State proved a valid threat to someone's safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release; and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process. *Id.* No single factor is dispositive. *Id.* As with the finding of dangerousness, we review the trial court's findings regarding whether the imposition of conditions on a defendant's pretrial release would mitigate the safety risk posed by the defendant under the manifest weight of the evidence standard. *Indeck Energy Services,* 2021 IL 125733, ¶ 56.

¶ 25　As stated above (*supra* ¶ 14), the trial court considered every factor enumerated in section 110-5(a). Based on the specific articulable facts of the case, the trial court noted its concern that defendant would not comply with any conditions of release, notwithstanding the sex offender risk assessment's recommendations. These concerns were based on defendant's behavior in a controlled setting over a 17-year period where he demonstrated his continued unwillingness or refusal to follow rules. The trial court was apprised that while in the custody of DHS, defendant possessed electronic devices with sexual images, possessed sexually inappropriate books and magazines, had sex and fathered a child with a fellow patient, and was allegedly involved in a sexual assault that required defendant's transfer to another facility. As its findings were made in complete harmony with the enumerated factors within section 110-5(a), we cannot agree that the trial court's granting of the State's petition to detain were against the manifest weight of the evidence.

¶ 26　　　　　　　　　　　　　　III. CONCLUSION

¶ 27　For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 28　Affirmed.